## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

ALLIANZ LIFE INSURANCE     )
COMPANY OF NORTH AMERICA,   )
        )
    **Plaintiff/Counterclaim Defendant,**   )
        )
**v.**         )     **No. CIV-17-1361-G**
        )
**GENE L. MUSE, M.D.,**     )
        )
    **Defendant/Counterclaimant;**   )
        )
**and**         )
        )
**PATIA PEARSON,**     )
        )
    **Defendant.**     )

## <u>ORDER</u>

Now before the Court is the Motion for Post-Trial Relief Under Rules 50(b), 59(a), and 52(a) (Doc. No. 219) filed through counsel by Plaintiff/Counterclaim Defendant Allianz Life Insurance Company of North America ("Allianz"). Defendant/ Counterclaimant Gene L. Muse, MD, and Defendant Patia Pearson have filed a Response (Doc. No. 227), to which Allianz has replied (Doc. No. 229). For the reasons discussed below, Allianz's Motion is denied.

*I.    Background*

Allianz issued a long-term care insurance policy (the "Policy") to Muse in 2000 and, after Muse claimed that he became "chronically ill" within the meaning of the Policy following a fall from a ladder, paid Muse benefits for services he claimed were received between July 1, 2015, and April 21, 2017. *See* Final Pretrial Report (Doc. No. 177) at 2-

4; Order Approving Final Pretrial Report (Doc. No. 181) at 1 (collectively referred to herein at the Final Pretrial Order or FPO). Allianz stopped paying benefits effective April 22, 2017, and brought suit in this Court on December 20, 2017.

Allianz has alleged that Muse and his caregiver, Pearson, fraudulently represented Muse's health as well as details regarding Pearson's arrangements with Muse and with the home health care company AdLife HomeCare, LLC ("AdLife") that affected Muse's eligibility to receive benefits for services provided by Pearson. Allianz asserted claims of fraud and conspiracy to commit fraud against Muse and Pearson, seeking recovery of damages for benefits improperly paid prior to April 22, 2017, and a judicial declaration that Muse was not entitled to additional Policy benefits in connection with care provided to him from April 22, 2017, to the present. Allianz also sought to have the Policy rescinded.

Muse and Pearson have denied these allegations and contested Allianz's entitlement to damages or the other relief requested. Additionally, Muse asserted counterclaims against Allianz for breach of contract and breach of the duty of good faith and fair dealing.

The Court's orders prior to trial narrowed the claims and issues to be presented. By Order dated December 18, 2019, the Court granted partial summary judgment to Allianz, determining that Allianz was entitled to a declaratory judgment that Muse was not entitled to benefits under the Policy in connection with services performed by Pearson from April 22, 2017, through March 30, 2018. Order of Dec. 18, 2019 (Doc. No. 128) at 17. Specifically, as to the period from April 22, 2017, to December 31, 2017, the Court found that there was no genuine factual dispute that a provision in the Policy excluding payment of benefits for "service(s) . . . for which you have no financial liability or that is provided

at no charge in the absence of insurance" applied and precluded payment of benefits to Muse. *Id*. at 11-13 (finding it undisputed that "Muse's obligation to pay Ad[L]ife was contingent upon his receipt of benefits from Allianz" and that "there is no evidence [in the summary judgment record] from which to reasonably infer that Muse was financially liable for the services rendered [by Pearson] during this time or that Muse would be held liable for these services in the absence of insurance"). As to the period from January 1, 2018, to March 30, 2018, the Court found that there was no genuine factual dispute that Muse's claim fell outside a provision in the Policy whereby Allianz is only obligated to pay benefits if Muse receives services from a "Home Health Aide" working "'under the supervision of a Home Health Care Agency.'" *Id*. at 13-14 (finding it undisputed that Pearson was not working for AdLife or any other Home Health Care Agency, as defined by the Policy, during that period).

The Court also determined that Allianz was entitled to summary judgment on Muse's counterclaim for breach of the implied duty of good faith and fair dealing, in which Muse challenged Allianz's failure to pay benefits beginning April 22, 2017. *Id*. at 14-16 (finding that, in light of prior determination that Muse was not entitled to benefits for the period from April 22, 2017, to March 30, 2018, no bad faith claim could be premised on a failure to pay such benefits). Further, in deciding a subsequent motion in limine, the Court precluded Muse from presenting evidence of damages on his counterclaim for breach of contract as it related to three time periods: "(1) from April 22, 2017, through March 30, 2018; (2) from March 31, 2018, through the present date; and (3) beyond the present date." Order of Jan. 9, 2020 (Doc. No. 167) at 2. As to the first period, the Court reiterated its

3

previous decision that Muse was not entitled to benefits for services rendered by Pearson from April 22, 2017, to March 30, 2018. *Id.* at 2. As to the second period, the Court determined that Muse was precluded by law from offering evidence of damages because it was undisputed that Muse had not timely submitted any claim for benefits for services rendered from March 31, 2018, to "present" and Muse could not rely on a theory of anticipatory repudiation to excuse his compliance with that requirement. *Id.* at 2-4. As to the third period, the Court determined that Muse was precluded by law from offering evidence of damages because Muse likewise could not rely on a theory of anticipatory repudiation and the claim for such damages was improperly contingent and speculative under Oklahoma law. *Id.* at 4-5 (citing Okla. Stat. tit. 23, § 21). Following these rulings, Muse acknowledged that nothing remained of his contract counterclaim and that "the Court has effectively granted judgment to Allianz on" that claim. Defs.' Mot. (Doc. No. 173) at 8.[1]

Remaining for disposition were Allianz's claims of fraud and conspiracy to commit fraud against Muse and Pearson, seeking recovery of damages for benefits improperly paid prior to April 22, 2017, as well as Allianz's requested remedy that the Policy should be rescinded pursuant to title 36, section 4426.1(C) of the Oklahoma Statutes (allowing rescission of long-term care insurance policy as relevant here "only upon a showing that the insured knowingly and intentionally misrepresented relevant facts relating to the insured's health") or as a result of "fraud committed by Muse." FPO at 3-4. Prior to trial,

---

[1] Accordingly, Muse omitted the contract counterclaim from the Final Pretrial Report. *See* FPO at 2-5.

4

the Court determined that while the claims of fraud and conspiracy to commit fraud—and the more specific issue of whether Muse misrepresented relevant facts relating to his health—must be determined by the jury, the requested remedy of rescission is purely equitable in this context and would be determined by the Court as necessary.  Tr. of Jan. 14, 2020 (Doc. No. 232).

Following a six-day trial, the jury returned its verdict in favor of Defendants on Allianz's fraud and conspiracy to commit fraud claims.  Verdict (Doc. No. 203) at 1-4. Further, the jury found, in answer to an interrogatory, that Muse had not knowingly and intentionally misrepresented relevant facts relating to his health.  *See id.* at 5.  The Court entered final judgment on January 31, 2020.  *See* J. (Doc. No. 207).

## II.     Discussion

Allianz now seeks judgment as a matter of law or, alternatively, a new trial on one of the theories of fraud presented to the jury: that Muse and Pearson made fraudulent misrepresentations as to details of Pearson's arrangements with Muse and with AdLife that affected Muse's eligibility to receive benefits for services provided by Pearson.  Allianz additionally requests an amended judgment with respect to its declaratory judgment claim, as well as a determination that the Policy is rescinded.

### A.   Allianz's Renewed Motion for Judgment as a Matter of Law Under Rule 50(b)

"Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position."  *Elm Ridge Expl. Co. v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (internal

quotation marks omitted).[2]  In considering whether judgment as a matter of law is proper, the Court must "[d]raw[] all reasonable inferences in favor of the nonmoving party." *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 772 (10th Cir. 2011) (internal quotation marks omitted).  The Court may not "weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury."  *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1268 (10th Cir. 2000); *see Henry v. Storey*, 658 F.3d 1235, 1238 (10th Cir. 2011).  Rule 50(b) motions should be "cautiously and sparingly granted and then only when the court is certain the evidence 'conclusively favors one party such that reasonable men could not arrive at a contrary verdict.'"  *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996).  Where, as here, the party moving for judgment as a matter of law has the burden of proof, "the motion may be granted only where the movant has established his case by evidence that the jury would not be at liberty to disbelieve."  *Black v. M & W Gear Co.*, 269 F.3d 1220, 1238 (10th Cir. 2001) (alteration and internal quotation marks omitted).

Allianz contends that the evidence presented at trial conclusively establishes that Muse and Pearson intentionally and falsely represented that Pearson was supervised by AdLife during the period of July 1, 2015, through August 25, 2015, and again during the period of January 1, 2016, through April 21, 2017.  Such a misrepresentation would be significant because, under the Policy, benefits are payable for home health services provided by a Home Health Aide, which is defined as "a person, other than a RN or nurse,

---

[2] The Court denied Allianz's initial request for judgement as a matter of law at trial, and Allianz's renewed Motion is timely under Rule 50(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 50(a), (b).

who provides: Maintenance or Personal Care; medical; speech; occupational; physical; or respiratory therapeutic care services under the supervision of a Home Health Care Agency."  Pl.'s Trial Ex. 2 at 12.[3]

>    ### 1.    July 1, 2015, to August 25, 2015

On August 25, 2015, AdLife owner Tom Adams sent an email to Pearson in which he discussed certain employment-related matters, including payroll and insurance, and set up a meeting with Pearson to "get the paperwork going."  Pl.'s Trial Ex. 252.  Allianz contends that this email proves that neither Muse nor Pearson had formed a relationship with AdLife prior to that date and that, consequently, AdLife could not have supervised Pearson's caregiver services prior to that date.  Despite the absence of a relationship with AdLife, says Allianz, Muse and Pearson represented that Muse received caregiver services supervised by AdLife as of July 1, 2015, by submitting to Allianz (1) Muse's Live-In Service Agreement with AdLife dated July 1, 2015, and (2) a claim form dated July 28, 2015, that designates AdLife as Muse's home health care provider.  *See* Pl.'s Trial Exs. 17, 140.

The Court finds that the evidence, viewed in Defendants' favor, does not conclusively preclude the finding that AdLife supervised Pearson during the period at issue.  Even assuming the formalities of Pearson's employment with AdLife had not been

---

[3] A party seeking to establish fraud under Oklahoma law must show: "(1) a false material misrepresentation; (2) made as a positive assertion which is known to be false or is made recklessly without knowledge of the truth; (3) with the intention that it be acted upon; and (4) which is relied on by the other party to his detriment."  *Simon v. Metro. Prop.*, No. CIV-08-1008-W, 2014 WL 12479649, at *6 (W.D. Okla. Apr. 17, 2014) (citing *Bowman v. Presley*, 212 P.3d 1210 (Okla. 2009)).

finalized by August 25, 2015, the jury was presented with evidence susceptible to the inference that AdLife nonetheless supervised Pearson as of July 1, 2015.  For example, Adams testified that AdLife was providing 24-hour live-in care to Muse in or around July 2015, and that his first meeting with Muse and Pearson was "probably June of 2015." Adams Dep. (Doc. No. 199) 35:8-12, 41:19-25.  Adams testified that he held a second meeting with Muse and Pearson to sign documents and to go over the Live-In Service Agreement, which was ultimately signed on July 1, 2015.  *Id.* 114:13-115:2, 115:23-25. The purpose of the document signing was, Adams testified, to allow AdLife "to begin starting care."  *Id.* 114:24-115:2.

A submission to Allianz on September 30, 2015, likewise supports the finding that AdLife supervised Pearson as of July 1, 2015.  This submission included a letter from Adams to Allianz stating that AdLife's caregiver services were initiated July 1, 2015, the date on which Muse executed the Live-In Service Agreement with AdLife.  Adams' submission included a billing statement bearing his signature for Pearson's services beginning July 1, 2015, as well as Pearson's caregiver activity log containing notes beginning that same date.  *See* Pl.'s Trial Ex. 36.

While Adams' statements appear to be inconsistent, a jury could reasonably infer from the totality of the evidence that AdLife supervised the caregiver services Pearson provided to Muse beginning July 1, 2015.  Judgment as a matter of law on this issue is, therefore, improper.

2.    *January 1, 2016, to April 21, 2017*

On January 1, 2016, Pearson's employment status with AdLife changed from W-2 employee to independent contractor.  AdLife's Independent Contractor Agreements with Pearson, dated January 1, 2016, and January 1, 2017, state that AdLife "shall not direct, supervise, or control, or be responsible for the supervision, direction, or control of the Home Health Aide while said Home Health Aide is performing the nursing services."  Pl.'s Trial Exs. 240, 248.  Allianz argues that Pearson and Muse continued to represent that Pearson was an employee of AdLife despite this change in employment status and failed to disclose the Independent Contractor Agreements to Allianz.

In response, Defendants assert that the Policy requires only that the caregiver be supervised by a Home Health Care Agency; it does not expressly state that the caregiver must be an employee of a Home Health Care Agency.  *See* Pl.'s Trial Ex. 2 at 12 (defining Home Health Aide as "a person . . . who provides: Maintenance or Personal Care . . . under the supervision of a Home Health Care Agency").  They contend that AdLife supervised Pearson regardless of the label of independent contractor.

The evidence at trial plainly and overwhelmingly showed that Muse and Pearson failed to disclose to Allianz that Pearson, in her written agreements with AdLife, was designated an independent contractor and not an employee beginning January 1, 2016.  The Court agrees with Defendants, however, that the Policy provision at issue does not preclude the possibility that a caregiver might be nominally labeled as an independent contractor but in actual fact supervised by a Home Health Care Agency and, therefore, qualify as a Home Health Aide.  *See Haworth v. Jantzen*, 172 P.3d 193, 197 (Okla. 2006) (explaining that

under Oklahoma law, unambiguous insurance contract language should be accepted in its "plain, ordinary, and popular sense," and ambiguities and uncertainties should be construed against the insurer); *see also id.* ("When an insurer desires to limit its liability under a policy, it must employ language that clearly and distinctively reveals its stated purpose."); *Am. Econ. Ins. Co. v. Bogdahn*, 89 P.3d 1051, 1054 (Okla. 2004) ("Under the reasonable expectations doctrine," which Oklahoma has adopted, "when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean.").

As to whether Muse and Pearson misrepresented whether AdLife supervised Pearson's caregiver services, the evidence adduced at trial does not point solely in Allianz's favor. Both Adams and Pearson testified that the transition from employee to independent contractor was merely a perfunctory response to changing employment regulations. *See* Adams Dep. 163:6-24 (noting that a change in regulations "drove the change to a contractor status"); Trial Tr. vol. 5, 790:16-791:4 (Pearson testifying that the change was due to a new law). When questioned regarding the actual effect of the transition on her work, and the level of supervision she received from AdLife, Pearson testified this transition had no practical effect. Trial Tr. vol. 5, 790:16-21; *see id.* 803:11-804:3 ("[T]hey did supervise my work. I still called them if I needed help. . . . I still sent them my daily time sheets, they still Q-and-A'd them, did a quality assurance. So it was supervision for me. I still called them if I needed them, you know, or had any questions."). As a result, the stipulation in the Independent Contractor Agreements that Pearson was not supervised by AdLife

10

could have been disregarded by the jury as false and Pearson's testimony that AdLife in fact continued to supervise her could have been accepted by the jury as true.

To adopt Allianz's argument would, therefore, require the Court to impermissibly weigh the evidence and judge witness credibility.  Even if Defendants misrepresented to Allianz that Pearson was an employee of AdLife rather than an independent contractor with AdLife during the relevant time period, the jury was confronted with evidence susceptible to a reasonable inference that any such misrepresentation was not material, as required to prove fraud.

Judgment as a matter of law is inappropriate if the evidence does not conclusively favor the moving party "such that reasonable [jurors] could not arrive at a contrary verdict." *Black*, 269 F.3d at 1238 (internal quotation marks omitted).  In view of the evidence referenced above, and drawing all reasonable inferences in Defendants' favor, the Court determines that Allianz is not entitled to judgment as a matter of law on the issue presented.

### B.  Allianz's Alternative Motion for a New Trial Under Rule 59

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Allianz included in its Motion an alternative request for a new trial under Rule 59.  Specifically, Allianz contends that the jury's verdict on Allianz's fraud claim, as it relates to Muse and Pearson's arrangement with AdLife, was contrary to the clear weight of the evidence.  Where, as here, the "new trial motion asserts that the jury verdict is not supported by the evidence, the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009) (internal quotation marks omitted).

The Court finds that the arguments and evidence tendered by Allianz do not justify a new trial in this matter.  As discussed above, evidence was presented at trial that would allow a reasonable jury to infer that AdLife in fact supervised Pearson during the periods at issue.  Having considered all the evidence, the Court determines that the verdict was not against the clear weight of the evidence.  *See Nanda v. Phillips 66 Co.*, 754 F. App'x 675, 680 (10th Cir. 2018) (noting that a new trial under Rule 59 is improper if "the jury's verdict had at least some 'basis in fact'").

### C.  Allianz's Motion to Amend the Judgment Under Rule 59(a)(2)

As noted, the Court granted summary judgment in favor of Allianz with respect to its declaratory judgment claim.  Specifically, the Court found that Allianz was entitled to a declaratory judgment that Muse was not entitled to benefits under the Policy for the home-health services performed by Pearson from April 22, 2017, through March 30, 2018.  Allianz now requests that the Court amend the judgment pursuant to Rule 59(a)(2) of the Federal Rules of Civil Procedure, contending that—based upon evidence discovered after summary judgment—the judgment should be amended to include a declaratory judgment that Muse was not entitled to benefits for three additional timeframes: (1) July 1, 2015, through August 24, 2015, (2) January 1, 2016, through April 21, 2017, and (3) any time between March 30, 2018,[4] and September 16, 2019, when Muse paid Pearson directly for caregiver services.

---

[4] As the Court's decision granting declaratory relief encompassed the date of March 30, 2018, the Court assumes that Allianz intended the third timeframe to begin March 31, 2018, and the Court has applied the latter date in its discussion accordingly.  Any request to expand the declaratory judgment to include March 30, 2018 is moot and is therefore denied.

As to the first and second of these periods, Allianz repeats its argument that undisputed evidence shows Pearson was not supervised by AdLife. As to the third period, Allianz argues that an exhibit not admitted at trial evidences that Pearson could not have been supervised by AdLife, or any other Home Health Care Agency, from March 31, 2018, to September 16, 2019. Pl.'s Mot. at 18-19.

As an initial matter, the Court agrees with Defendants that Rule 59(a)(2) is an improper vehicle for the requested relief. That rule provides: "After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). As Allianz's declaratory relief claim was decided on summary judgment and was not subject to a bench trial, the Court agrees with Defendants that relief under Rule 59(a)(2) is not proper. *See Morgan v. N.A.R., Inc.*, No. 2:06-CV-470 TS, 2008 WL 2149370, at *1 (D. Utah May 19, 2008) (declining to consider request for amendment of judgment under Rule 59(a)(2) because the "case was concluded on summary judgment, rather than by a nonjury trial"); *Leathers v. Leathers*, No. 08-cv-1213, 2015 WL 12733383, at *2 (D. Kan. Nov. 19, 2015) ("Rule 59(a)(2) . . . provides that the court may reopen the judgment and may conduct further proceedings after a bench trial.").

Even if the Court were to construe the request under Rule 59(e), the motion would fail. "Rule 59(e) provides a means to support reconsideration of matters properly encompassed in a decision on the merits." *Steele v. Young*, 11 F.3d 1518, 1520 n.1 (10th Cir. 1993) (internal quotation marks omitted); *see Exxon Shipping Co. v. Baker*, 554 U.S.

471, 486 n.5 (2008) (Rule 59(e) motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (internal quotation marks omitted)).  As to the first and second periods cited by Allianz, Allianz did not seek declaratory relief for any time prior to April 22, 2017, in its motion for summary judgment.  *See* Pl.'s Mot. Partial Summ. J. (Doc. No. 98) at 23; *accord* Compl. ¶ 45 (Doc. No. 1) ("Allianz requests that Muse be found to be not entitled to additional Policy benefits for services provided from April 22, 2017 to the present.").  And Allianz did not include these time periods in any claim for declaratory relief in the Final Pretrial Report.  *See* FPO.  "Rule 59(e) cannot be used to expand a judgment to encompass new issues which could have been raised prior to issuance of the judgment."  *Steele*, 11 F.3d at 1520 n.1.

As to the third period (March 31, 2018, through September 16, 2019), Allianz cites the Court's grant of summary judgment on Allianz's declaratory judgment claim, in which the Court held that Muse is not entitled to benefits under the Policy based on the home-health services performed by Pearson from January 1, 2018, through March 30, 2018, *see* Order of Dec. 18, 2019 (Doc. No. 128) at 13-14 (finding it undisputed that Pearson was not working for, or supervised by, AdLife or any other Home Health Care Agency during that period), and asks that this declaration be extended to the period from March 31, 2018, to September 16, 2019.  Allianz argues that financial records included in what was labeled by Defendants as their Exhibit 27—which was not admitted at trial (*see* Doc. No. 200-1)—reflect direct "payments from Muse to Pearson for caregiver services allegedly provided between April 2018 and September 2019," and therefore show that Pearson was not

working for or supervised by AdLife or any other Home Health Care Agency during that period. Pl.'s Mot. at 18-19. Defendants correctly note that Allianz did not seek summary judgment as to this later period. *See* Pl.'s Mot. Partial Summ. J. This is not significant, though, as Allianz was not required to do so and in any event Allianz asserts that Defendants failed to produce certain relevant documents and Allianz did not learn of them until they were provided by AdLife on October 6, 2019—after summary judgment briefing had essentially been concluded. *See* Pl.'s Reply at 4. What is significant is that Allianz did not ask the Court for relief as to that alleged discovery deficiency prior to trial and, following the grant of summary judgment, did not include any claim for additional declaratory relief in the Final Pretrial Report. *See* FPO. Entry of a new judgment under Rule 59(e) is not appropriate in these circumstances. *See Steele*, 11 F.3d at 1520 n.1.

In its Reply, Allianz adds a contention that 28 U.S.C. § 2202 allows the Court to expand its declaratory judgment even as to a timeframe for which there was no prior demand or proof. *See* Pl.'s Reply at 2. Because this argument was not made until the filing of a reply brief, it will not be considered. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011); *Mikado v. Allbaugh*, No. CIV-15-1389-D, 2016 WL 3579228, at *2 (W.D. Okla. June 28, 2016); LCvR 7.1(i) (allowing reply briefs insofar as they address "new matter raised in the response"). Moreover, it appears the matter is premature because, according to Muse, he has not submitted a claim for benefits under the Policy with respect to the period from March 31, 2018, to September 16, 2019.

D. <u>Allianz's Motion That the Court Enter Findings of Fact and Conclusions of</u>
<u>Law under Rules 39(c) and 52(a) Declaring the Policy to Be Rescinded</u>

Finally, Allianz requests that the Court enter findings of fact and conclusions of law on the issue of rescission pursuant to Federal Rule of Civil Procedure 52(a), which provides in relevant part that "[i]n an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).  According to Allianz, the jury served as an advisory jury, as contemplated by Federal Rule of Civil Procedure 39(c)(1), on the issue of rescission because the Court submitted an interrogatory to the jury related to that issue.  Rule 39(c) provides that, "[i]n an action not triable of right by a jury, the court, on motion or on its own . . . may try any issue with an advisory jury."  Fed. R. Civ. P. 39(c)(1).

It is useful to trace the procedural history of Allianz's request for rescission of the Policy.  Throughout this litigation, Allianz pursued the legal claim of fraud and sought rescission of the Policy not as a separate equitable claim, but as a remedy for fraud in addition to damages.  *Compare* Compl. (Doc. No. 1) ¶ 53, *with* Okla. Stat. tit. 15, §§ 231-242 (Oklahoma statutes governing claims of rescission).  In the summary judgment briefing, the parties disagreed as to whether title 36, section 4426.1(C) of the Oklahoma Statutes allowed rescission of an insurance contract when the insured is found to have committed fraud in the claims process rather than merely the initial application process (i.e., whether rescission could be premised on a misrepresentation made in the *performance of* the contract or only a misrepresentation made as an *inducement to enter* the contract). In its Order denying Defendants' Motion for Summary Judgment, the Court held—without

deciding the issue—that, "At this juncture, the Court will not foreclose Allianz's ability to seek rescission under the statute, should the alleged fraudulent conduct be proven."  Order of Dec. 18, 2019 (Doc. No. 127) at 17.[5]

At trial, the sole claims remaining for disposition were Allianz's claims of fraud and conspiracy to commit fraud against Muse and Pearson.  On those claims, Allianz sought remedies of (1) recovery of damages for benefits improperly paid to Muse prior to April 22, 2017, and (2) rescission of the Policy pursuant to section 4426.1(C) *or* as a result of "fraud committed by Muse."  FPO at 3-4.  In the absence of a claim by Muse to recover on the Policy, whether in contract or tort, there was no need to put before the jury any defense that the Policy was void for fraud; therefore, Allianz's requested remedy of rescission was purely equitable and to be determined by the Court.  A jury determination was still required, however, as to the issues common to Allianz's legal and equitable contentions, namely the claim that Muse committed fraud and—as required to invoke section 4426.1(C)—the narrower assertion that Muse knowingly and intentionally misrepresented relevant facts relating to his health.[6]  *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959); *Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003); *see also* 9 *Cyclopedia of Federal Procedure* § 31.16 (3d ed. 2010) ("When both legal and equitable issues are involved in the same action and a jury trial of the legal issues has been demanded,

---

[5] The Court noted its tentative agreement with Allianz's construction of the statute and that Defendants' cited authorities did not address section 4426.1(C).

[6] To the extent that Allianz premised its request for rescission on section 4426.1(C), it was required to "show[] that the insured knowingly and intentionally misrepresented relevant facts relating to the insured's health."  Okla. Stat. tit. 36, § 4426.1(C).

the court may dispose of the entire matter in a single trial by impanelling a jury, taking such evidence as is germane to the issues for the jury to determine, submitting those issues to the jury, and then deciding the equitable issues, or, if necessary, taking such additional evidence as may be necessary on the equitable issues in the absence of the jury.  This same procedure may be followed when there are both jury and nonjury issues at law." (footnote omitted)).

Accordingly, prior to trial the Court held that it would submit to the jury Allianz's fraud claims, and also an interrogatory as to whether Muse misrepresented relevant facts relating to his health, but would reserve the question of whether the Policy should be rescinded for determination by the Court as necessary.  Tr. of Jan. 14, 2020 (Doc. No. 232) 2:22-3:3 (Court stating that the interrogatory was intended to "serve as a predicate for the plaintiff to ask the Court to declare that contract to be rescinded," should the jury find in Allianz's favor on both the fraud claim and the interrogatory).  No party objected to this procedure.  Following a six-day trial, the jury returned its verdict in favor of Defendants on Allianz's fraud and conspiracy to commit fraud claims.  Verdict (Doc. No. 203) at 1-4. Further, the jury found, in answer to the interrogatory, that Muse had *not* knowingly and intentionally misrepresented relevant facts relating to his health.  *Id*. at 5.  Because this verdict denied Allianz a foundation on which to base any request for rescission, there was no need for further evidence or further findings as to that remedy, and the Court entered final judgment on January 31, 2020.

Undeterred, Allianz now asks that the Court render additional findings and conclusions, including—supplanting the jury's verdict—that Muse submitted claims for

benefits that were based on intentional misrepresentations of both his health and Pearson's supervision by AdLife and, therefore, that the Policy is rescinded.  Pl.'s Mot. at 19-22. Allianz contends that, consistent with Federal Rule of Civil Procedure 39(c)(1), the jury served as an advisory jury on the issue of rescission and, consistent with Federal Rule of Civil Procedure 52(a), the Court may not give deference to the jury's advisory verdict but must make independent and detailed findings of fact and conclusions of law.  *Id*. at 19-20.

First, Allianz's reliance on Rule 39(c) is misplaced.  No claim or issue was tried with an advisory jury.  As detailed above, the issues common to Allianz's legal and equitable contentions—specifically, Allianz's claim that Muse committed fraud and its narrower assertion that Muse knowingly and intentionally misrepresented relevant facts relating to his health—were tried to and submitted for full determination by the jury.  As such, the Court may not disregard the jury's verdict but, consistent with the Federal Rules of Civil Procedure, "is bound by the jury's determination of factual issues common to both the legal and equitable claims."  *Palace Expl. Co.*, 316 F.3d at 1119 (internal quotation marks omitted).

As to Rule 52(a), no findings and conclusions are required here beyond those reflected in the Verdict and the Judgment.  The necessity of additional evaluation and determination of the equitable remedy of rescission was contingent upon the jury finding in favor of Allianz on its fraud claim and, possibly, the interrogatory as to whether Muse had misrepresented his health.  Because the jury returned a verdict against Allianz on that fraud claim (as well as the specific question of whether a fraudulent representation was made about Muse's health), there was no support for a remedy of rescission.  *See Silk v.*

*Phillips Petroleum Co.*, 760 P.2d 174, 180 (Okla. 1988) (explaining that "an action for rescission based on fraud must necessarily fail" if the underlying fraud is not proven).  No equitable issue remained to be considered, and, therefore, no findings or conclusions were required other than to simply state the outcome.  *See Ioselev v. Schilling*, No. 3:10-CV-1091-J-34MCR, 2014 WL 905521, at *4 (M.D. Fla. Mar. 7, 2014) ("[T]he Court must make findings of fact and conclusions of law as to [the] equitable claims to the extent that the Verdict did not resolve those claims.").[7]

## CONCLUSION

For the reasons stated above, Allianz's Motion for Post-Trial Relief Under Rules 50(b), 59(a), and 52(a) (Doc. No. 219) is DENIED.

---

[7] As was the case in deciding Defendants' Motion for Summary Judgment, the Court need not—and does not—reach the issue of whether title 36, section 4426.1(C) of the Oklahoma Statutes allows rescission of an insurance contract when the insured is found to have committed fraud in the claims process rather than merely the application process.  The Court notes, however, that Allianz has reversed its position on that issue and now contends section 4426.1 pertains only to fraud in the inducement and is therefore inapplicable to its request for rescission here.  *See* Pl.'s Post-Trial Mot. at 21; Pl.'s Reply at 10.  Allianz's candor is appreciated but it does not change the result.  The Court also need not—and does not—reach the issue of whether damages and rescission are mutually exclusive remedies for fraud under Oklahoma law.  *See* Trial Tr. vol. 3 (Doc. No. 215-2) 557:2-6 (Court ordering supplemental briefing during trial as to whether Allianz, if it prevailed on its fraud claim, must choose between recovery of damages and rescission and, if so, when that choice must be made); *cf. Fed. Deposit Ins. Corp. v. Palermo*, 815 F.2d 1329, 1338-39 (10th Cir. 1987) ("We need not decide whether [the] remedies [of rescission and damages for his fraud claim] are mutually exclusive . . . because we find that Palermo's failure to comply with the Oklahoma statute governing rescission, Okla. Stat. Ann. tit. 15, § 235, prevents him from seeking that remedy.").

IT IS SO ORDERED this 26th day of October, 2020.

CHARLES B. GOODWIN
United States District Judge